DCMR, d/b/a Diversified Components Manufacturing Representative, Plaintiff,

v.

TRIDENT PRECISION MANUFACTURING, Defendant.

No. 02-CV-6237T.

United States District Court, W.D. New York.

Jan. 28, 2004.

Richard L. Bourland, Bourland Kirkman Seidler Evans Jay & Michel, Fort Worth, TX, Thomas N. Trevett, Trevett, Lenweaver & Salzer, P.C., Rochester, NY, for Plaintiff.

Greta Katrin Kolcon, Woods Oviatt Gilman LLP, Rochester, NY, Jeff A. Cody, Fulbright & Jaworski, Dallas, TX, for Defendant.

## DECISION and ORDER

TELESCA, District Judge.

### INTRODUCTION

Plaintiff DCMR, d/b/a Diversified Components Manufacturers' Representative ("plaintiff"), brings this diversity action against defendant Trident Precision Manufacturing, Inc. ("defendant"), alleging breach of contract, violation of the Sales Representative Act of Texas, fraud, quantum meruit and breach of the implied covenant of good faith and fair dealing, claiming that defendant failed to honor its contractual obligations to plaintiff. Defendant brings this motion for dismissal pursuant to Federal Rule of Civil Procedure 12 for failure to state a claim, or alternatively, for summary judgment pursuant to Federal Rule of Civil Procedure 56, arguing that no triable issue of fact exists, and thus, it is entitled to judgment as a matter of law because it has fully complied with its obligations under the contract.[1] For the reasons set forth below, defendant's motion requesting summary judgment in its favor is granted in its entirety, and each of plaintiff's claims is dismissed with prejudice.

### BACKGROUND

Plaintiff is a corporation duly organized under the laws of the State of Texas, with its principal place of business located in Fort Worth, Texas, and conducts business as a manufacturer's sales representative on behalf of several principals, including defendant. Defendant is a corporation duly organized under the laws of the State of New York, with its principal place of business located in Webster, New York, and is engaged in the business of manufacturing, among other things, electro-mechanical sub-assemblies.

The basis of this action is a contract ("the Contract") entered into by the parties on July 1, 1999, and terminated by defendant on September 27, 2001.[2] By the terms of the contract, plaintiff agreed to perform certain marketing services for defendant in exchange for an agreed upon commission. Section "V(C)" of the contract provides that plaintiff is entitled to a 5% commission "on the net invoice price of TRIDENT PRODUCTS provided by TRIDENT and accepted and paid by the customer...."

Section "VII(B)" provides that either party may terminate the Contract, stating:

either party may terminate this agreement for any reason whatsoever upon thirty (30) days written notice of termi-

---

1. Plaintiff also filed what is purported to be a cross-motion for summary judgment, but in actuality is simply an attorney's affidavit, which raises no additional arguments other than those it used to oppose defendant's motion for summary judgment, and since it supports no triable issue of fact it is dismissed as a matter of law.

2. A copy of the Contract can be found at "Exhibit A" to plaintiff's Amended Complaint. (Amended Complaint, Doc. No. 27, Exhibit A).

nation to the other party. Other than a termination by TRIDENT for [DCMR's] material breach of this agreement, TRIDENT shall pay [DCMR] commissions for all orders obtained as a result of [DCMR]'s efforts that were booked, accepted and shipped prior to the end of the one hundred and twenty (120) day period commencing on the date of notice of termination by the terminated party.

The Contract further provides that upon termination, defendant's liability to plaintiff is limited, specifically stating:

It is agreed and understood that TRIDENT will not, by any reason of any termination of this agreement or for any reason whatsoever, be liable to [DCMR] for indirect, incidental or consequential damages of any kind, including, but not limited to, compensation, reimbursement or damages on account of present or prospective loss of profits on sales, goodwill, termination of employees, salaries, expenditures, investment or commitments made in connection herein.

Prior to the termination of the contract on December 27, 2001, plaintiff introduced defendant to Applied Science Fiction ("ASF"), a digital imaging company which manufactured photo kiosks and needed to locate a company to manufacture components for the kiosks. ASF anticipated eventually manufacturing 40,000 kiosks. Defendant informed ASF that it could produce the needed components for a price of $10,000 per unit. Several "test" kiosks were manufactured, but a complete order was never placed. In December 2002, ASF informed defendant that the kiosk project was on hold, and in 2003 ASF was acquired by Eastman Kodak Company. At no point did ASF sign a contract with defendant, nor was an invoice issued for kiosks other than the "test" kiosks.

Plaintiff brings this action claiming that it is entitled to a commission for the 40,000 unit forecast ASF provided defendant, and seeks relief based upon: (1) breach of contract; (2) violation of the Sales Representative Act of Texas; (3) fraud; (4) quantum meruit; (5) breach of implied covenant of good faith and fair dealing. Plaintiff also claims that it is entitled to punitive damages based on defendant's willful and malicious conduct and that it is entitled to attorneys fees incurred in this action.

Defendant moves for summary judgment requesting that the Court find in its favor and dismiss plaintiff's claims, arguing that there exists no genuine issue as to a material fact, claiming it fully satisfied its obligations under the contract with plaintiff.

*DISCUSSION*

Rule 56 of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment as a matter of law only where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact...." F.R.C.P. 56(c) (2003). The party seeking summary judgment bears the burden of demonstrating that no genuine issue of material fact exists, and in making the decision the court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Ford v. Reynolds,* 316 F.3d 351, 354 (2d Cir.2003) (*citing Marvel Characters v. Simon,* 310 F.3d 280, 285–86(2d Cir.2002)). "Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Id.*[3]

---

**3.** Defendant asserts for the first time in its reply papers that jurisdiction in this Court is improper because plaintiff fails to plead

damages in excess of the statutory minimum required under 28 U.S.C. § 1332. However, in its Complaint, plaintiff claims that it is en-

### A. Breach of Contract Claim

In the Count One of its Amended Complaint (Doc. No. 27), plaintiff alleges that "[i]n breach of the Sales Representative Agreement the Defendant wrongfully and in bad faith terminated the Agreement to the damage of Plaintiff...." (Amended Complaint, Doc. No. 27, p. 3). Defendant, in its motion for summary judgment, argues that dismissal is appropriate because, by contract, the parties had the right to terminate the agreement upon thirty days notice, for any reason or no reason, and thus its choice to exercise that right can not amount to a breach of the Contract.

Under New York law, "an employer has the right to terminate an at will employee at any time for any reason or for no reason, except where that right has been limited by express agreement." *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 334, 514 N.Y.S.2d 209, 506 N.E.2d 919 (1987). Thus, defendant could terminate plaintiff at any time, for any reason or no reason at all, provided the Contract did not limit its broad right to do so.[4]

When a court interprets a contract, the intent of the parties governs, and words and phrases should be given their plain meaning. *American Exp. Bank Ltd. v. Uniroyal, Inc.*, 164 A.D.2d 275, 277, 562 N.Y.S.2d 613 (1st Dep't 1990). "Rather than rewrite an unambiguous agreement, a court should enforce the plain meaning of that agreement." *Id.* Where, as here, "the intent of the parties can be determined from the face of the agreement, interpreta-

tion is a matter of law and the case is ripe for summary judgment." *Zolotar v. New York Life Insurance Company*, 172 A.D.2d 27, 30, 576 N.Y.S.2d 850 (1st Dep't 1991).

Section "VII", Paragraph "B" of the Contract states "either party may terminate this agreement for any reason whatsoever upon thirty (30) days written notice of termination to the other party. ..." By letter dated September 27, 2001, defendant informed plaintiff that it was terminating the Contract in accordance with Section "VII", Paragraph "B" of the Contract.[5] Therefore, plaintiff's first cause of action for "wrongful" breach of contract is dismissed.

### B. Sales Representative Act of Texas Claim

Plaintiff's Second Cause of Action alleges that defendant wrongfully and in bad faith terminated the Contract in violation of the Sales Representative Act of Texas, codified at Tex. Bus. & Comm.Code §§ 35.81–35.86 (2002). Defendant responds claiming that the Contract and any litigation arising from the Contract is governed by New York law, and thus plaintiff's claim under Texas law should be dismissed.

Federal courts sitting in diversity in New York State must apply New York's choice of law rules when determining which law governs a contract. *Lehman Bros. Commercial Corp. v. Minmetals Int'l Non–Ferrous Metals Trading*

---

titled to a 5% commission on a forecasted sale totaling $40,000,000—an amount well in excess of $75,000 the amount necessary to confer federal jurisdiction by diversity of citizenship. Therefore, I find that diversity jurisdiction is proper.

**4.** Although Section "IV", Paragraph "B", of the Contract identifies plaintiff as an "independent contractor", and "not an employee", its duties under the Contract are sufficiently

similar to those of an employee so as to negate any distinction. *See Arledge v. Stratmar Systems, Inc.*, 948 F.2d 845 (2d Cir.1991) (Independent contractor relationship sufficiently analogous to employment contract so as to bring it within purview of "at-will" rule of discharge.).

**5.** *See* Affidavit of Nicholas Juskiw, Doc. No. 44, Exhibit C.

*Co.,* 179 F.Supp.2d 118 (S.D.N.Y.2000). New York courts may refuse to enforce a choice of law clause only where: (1) there is no reasonable basis for the choice of law; or (2) the application of the chosen law would violate a fundamental public policy of another jurisdiction with materially greater interests in the dispute. *Hartford Fire Ins. Co. v. Orient Overseas Container Lines (UK), Ltd.,* 230 F.3d 549, 556 (2d Cir.2000).

▆ Here, the parties agreed that New York law would govern the Contract and any litigation arising from it. Section "IX", Paragraph "A" of the Contract directs that "[t]his agreement and the legal relations between the parties, shall be governed by and interpreted solely in accordance with the laws of the State of New York." Moreover, neither exception to New York's choice of law rule applies. First, as defendant has its principal place of business in Webster, New York, there is a reasonable basis for choosing New York law to control. Second, no fundamental public policy will be offended by the application of New York law, particularly since the parties agreed that New York State law would control their "legal relations." Therefore, I conclude that New York law, and not Texas law, governs this dispute. Accordingly, plaintiff's second cause of action, based on Texas State law, is dismissed.

### C. Fraud Claim

Plaintiff's Count 3 alleges that defendant fraudulently induced plaintiff, to plaintiff's detriment, into entering a contractual relationship with it. Defendant contends that plaintiff fails to plead a proper fraud claim, and instead simply converts its breach of contract claim into a fraud claim by adding an allegation that defendant never intended to fulfill its obligations under the contract.

▆ Under New York law, a plaintiff asserting a claim for fraud must establish: (1) a material misrepresentation or omission of fact; (2) made with knowledge of its falsity; (3) with an intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) injury to plaintiff. *Schlaifer Nance & Co. v. Estate of Warhol,* 119 F.3d 91, 98 (2d Cir.1997). However, where a plaintiff alleges only that the defendant entered into a contract with no intention of performing, a claim for fraud is not generally established. *Grappo v. Alitalia Linee Aeree Italiane,* 56 F.3d 427, 434 (2d Cir.1995).

Here, in support of its contention that defendant committed fraud, plaintiff offers nothing more than bald assertions that defendant never intended to fulfill its obligations under the contract. Because plaintiff fails to state a claim for which relief may be granted on its fraud claim, the claim is dismissed.

### D. Quantum Meruit Claim

In Count 4, plaintiff alleges that it is entitled to recover for services it provided to defendant on the basis of quantum meruit. Defendant responds, arguing that plaintiff is unable to recover under quantum meruit because a valid contract covers the subject of this dispute.

▆ Quantum meruit is a doctrine of "quasi contract." *Zolotar v. New York Life Insurance Company,* 172 A.D.2d 27, 576 N.Y.S.2d 850, 852 (1st Dep't 1991). In New York State, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter. A 'quasi contract' only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent unjust enrichment." *Clark–Fitz-*

*patrick, Inc. v. Long Island Rail Road Company,* 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987)(*internal citations omitted*).

Here, there exists a valid contract between plaintiff and defendant which clearly and concisely establishes the circumstances under which plaintiff would be entitled to a commission. Furthermore, plaintiff has failed to demonstrate any issue of material fact which would indicate that defendant had been unjustly enriched as a result of a benefit conferred by plaintiff. As such, plaintiff is unable to recover on the basis of quantum meruit, and its fourth cause of action is dismissed.

### E. Breach of Good Faith and Fair Dealing Claim

Plaintiff further alleges that defendant violated the covenant of good faith and fair dealing when it terminated the contract. Defendant argues that it cannot be held liable for a breach of the implied covenant of good faith and fair dealing based on its exercise of expressed rights under the Contract.

"Implicit in every contract is a promise of good faith and fair dealing, which is breached when a party acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under the agreement." *Skillgames, LLC v. Brody,* 1 A.D.3d 247, 767 N.Y.S.2d 418, 422 (1st Dep't 2003). A defendant "does not breach its duty of good faith and fair dealing by exercising it rights under the contract[ ] . . . ." *Associates Capital Services Corp. of New Jersey v. Fairway Private Cars, Inc.,* 590 F.Supp. 10, 16 (S.D.N.Y.1982).

Moreover, plaintiff has failed to offer any evidence that it is entitled to additional payments under the contract. Plaintiff's claim for breach of the implied covenant of good faith and fair dealing cannot substitute for an unsustainable breach of contract claim. Accordingly, plaintiff's claim for breach of the covenant of good faith and fair dealing is dismissed.[6]

### CONCLUSION

For the reasons set forth above, I find that there exists no material facts in dispute as to any of plaintiff's claims. Accordingly, defendant's motion for summary judgment is granted in its entirety, and each plaintiff's claims is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

---

**6.** Plaintiff also pleaded two additional causes of action: (1) that it was entitled to punitive damages; and (2) that it was entitled to an award of attorneys' fees. As each of plaintiff's claims upon which an award could be made is hereby dismissed with prejudice, plaintiff's request for punitive damages and attorneys' fees is also hereby dismissed.